**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTHA RUIZ, an individual, and YESENIA VERDUZCO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL INSURANCE COMPANY OF AMERICA, a corporation, LIBERTY MUTUAL INSURANCE COMPANY, a corporation and Does 1 through 10,<br><br>Defendants. | CASE: 1:20-cv-00218-AWI-EPG<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE THE COMPLAINT**<br><br>(Doc. No. 8) |

Plaintiffs Martha Ruiz and Yesenia Verduzco brought a claim for breach of the implied covenant of good faith and fair dealing against General Insurance Company of America ("General") and Liberty Mutual Insurance Company ("LMIC" and together with General, "Defendants") alleging that Defendants failed, in bad faith, to make full payment under an insurance policy on Plaintiffs' home. Defendants brought a motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[1] arguing that Plaintiffs failed to state a claim and failed to allege that LMIC is General's alter ego. Defendants further move the Court under Rule 12(f) to strike all alter ego allegations in the Complaint. For the reasons set forth below, the Court will grant Defendants' motion to dismiss in its entirety, grant Plaintiffs leave to amend, and deny Defendants' motion to strike as moot.

---

[1] The use of "Rule" herein refers to the Federal Rules of Civil Procedure unless otherwise noted.

**SUMMARY OF ALLEGATIONS**

As alleged in the Complaint, General is a New Hampshire corporation licensed to conduct business in the State of California and LMIC is a Massachusetts corporation licensed by the California Department of Insurance. Doc. No. 1 ¶¶ 2-3. General is sometimes referred to as a "SAFECO Company." Id. ¶ 3.

General issued a homeowner's insurance policy (the "Policy") to Plaintiffs that provided up to $230,200 for repairs to Plaintiffs' home, as well as $115,100 for replacement of personal property and up to $46,040 for additional living expenses. Doc. No. 1 ¶ 8. Plaintiffs allege that policies "underwritten by General are marketed and advertised as sold by Liberty Mutual, not the true insuring entity, General." and that the Policy "represents that the insurer is a non-existent entity called 'Safeco, a Liberty Mutual Company.' " Id. ¶¶ 13-14.

Plaintiffs promptly submitted a claim on the Policy (the "Claim") after their home was damaged by fire in February 2019. Doc. No. 1 ¶ 9. According to the Complaint, "LMIC employees, supervisors, and managers were solely response for accepting, investigating and adjusting" the Claim and "routinely represented they [we]re 'Safeco' or 'General' or 'Liberty Mutual'" in interactions with Plaintiffs and/or their agents. Id. ¶ 10.

Further, the Complaint alleges that, in processing the Claim, LMIC: (i) "faile[ed] to conduct thorough, fair, and objective investigations of all bases the Claim"; (ii) "fail[ed] to disclose benefits, coverages, and time limits that applied to the Claim"; (iii) "misrepresent[ed] and conceal[ed] pertinent facts and coverages relating to the Claim"; (iv) "fail[ed] to pay or unreasonably delay[ed] the payment of policy benefits due for repair to the dwelling, for personal property and for additional living expenses relating to the Claim"; (v) "fail[ed] to set forth in any denial letter a statement listing all bases for the denial of part of the claim and the factual and legal bases for each reason given for the denial;" (vi) "fail[ed] to explain how it applied policy exclusions to deny the claim in whole or in part"; and (vii) "violat[ed] Insurance Code § 790.03(h), and Fair Claims Settlement Practices Regulations §§ 2695.1 et seq." Doc. No. 1 ¶ 25.

The Complaint also alleges that "LMIC, on behalf of General and many other insuring entities wholly owned and operated under the Liberty Mutual banner, and as to which LMIC

provides claims investigation and adjusting services, is engaged in an illegal scheme to improperly hide coverages from California insureds" and "to improperly deny fire loss claims brought under California dwelling policies." Doc. No. ¶ 22.k-1.

Finally, the Complaint alleges that "dividing insuring and claims handling functions" between two entities, as Defendants allegedly have, is improper because doing so: increases claims expenses and, therefore, premiums; reduces the asset size of insuring entities to avoid large punitive damages awards; and improperly shields parent entities from discovery and liability. Doc. No. 1 ¶ 23.

Based on these allegations, Plaintiffs allege a single claim for breach of the implied covenant of good faith and fair dealing[2] against General and LMIC. Doc. No. 1 ¶¶ 24-31.

## **LEGAL FRAMEWORK**

Under Rule 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).

//

---

[2] For brevity, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is sometimes referred to herein as a "bad faith claim."

3

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.

The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) (citation omitted). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made ...." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**DEFENDANTS' MOTION TO DISMISS**

Defendants argue that Plaintiffs have failed to state a bad faith claim against General or LMIC because Plaintiffs set forth no facts showing that benefits were unreasonably withheld under the Policy and instead rely entirely on "formulaic, wholly conclusory allegations that fail to satisfy the most basic federal court pleading standards." Doc. No. 8 at 9:10-13. Further, they argue that Plaintiffs' claim fails as to LMIC for the additional reason that LMIC was not a party to the Policy and the Complaint lacks facts sufficient to show that LMIC was General's alter ego. Id.,

4

Part IV. B.

Plaintiffs argue in opposition that few facts are required to state their claim because federal pleading standards are low and most relevant facts are uniquely in the possession of the Defendants. Doc. No. 10, Part II. Further, they argue that allegations in the Complaint are sufficient under relevant case law to show that LMIC was General's alter ego when combined with judicially noticeable facts showing that LMIC completely controlled General. Id., Part I.

The Court will first address the adequacy of the bad faith allegations and then turn to the alter ego allegations.

**1.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

**a.      Legal Standard**

Plaintiffs must prove each of three elements to make out a claim for breach of the implied covenant of good faith and fair dealing in connection with the Policy: (1) that General unreasonably deprived Plaintiffs of insurance benefits owed; (2) that such unreasonable conduct was the proximate cause of the claimed damage; and (3) the amount or extent of damage. See Cooper v. Travelers Indem. Co. of Illinois, 2002 WL 32775680, *5 (N.D. Cal. Nov. 4, 2002). The test for bad faith, in other words, "is whether the insurer was unreasonable in denying coverage." Id. (citing Opsal v. United Services Auto. Assn., 2 Cal.App.4th 1197 (1991) and Guebara v. Allstate Ins. Co., 237 F.3d 987, 995 (9th Cir. 2001)). "If an insurer denies coverage because of a genuine dispute over coverage, the insurer does not act in bad faith." Id. (citing Fraley v. Allstate Ins. Co., 81 Cal.App.4th 1282 (2000), Guebara, 237 F.3d at 992-994 and Chateau Chamberay Homeowners Ass'n v. Associated International Ins. Co., 90 Cal.App.4th 335 (2001)).

**b.      Discussion**

The allegations in the Complaint relevant to Plaintiffs' bad faith claim are as follows: General issued an insurance policy for Plaintiffs' property. Doc. No. 1 ¶ 7. Plaintiffs' property was damaged by fire and Plaintiffs timely submitted an insurance claim. Id. 1 ¶ 12. LMIC handled all aspects of claim processing, id. ¶ 9, and "improperly denied parts of Plaintiffs' Claim without sufficient investigation and without communicating a sufficient basis for the denial in writing." Id. ¶ 22.j. Further, the Complaint alleges, in laundry-list fashion, that LMIC "failed to guide and train

5

its employees," "misrepresented coverages," applied "policy provisions improperly" and so forth. See Doc. No. 1 ¶ 22.

Plaintiffs contend that these allegations are "more than sufficient to state a claim for insurance bad faith" because "[n]o heightened pleading standard applies" and Plaintiffs are "obligated only to make Defendants aware of the nature of their allegations, and to permit Liberty Mutual to conduct discovery and defend." Doc. No. 10 at 9:14-20. Rule 12(b)(6), however, also requires a plaintiff to plead "underlying facts" that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, and that "plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Levitt, 765 F.3d at 1135. Plaintiffs' allegation that Defendants "improperly denied parts of Plaintiffs' Claim" does nothing more restate the first element of a bad faith claim, and Plaintiffs' allegations about misrepresenting coverage and such are largely cribbed from the California Code of Regulations and California Insurance Code, with no meaningful reference to the events underlying this case. Compare, e.g., Doc. No. 1 ¶ 22.i. to Cal. Ins. Code § 790.03(h). The Court agrees with Plaintiffs that pleading with specificity is not required to state a bad faith claim, and Plaintiffs are no doubt correct that Defendants are in possession of information relating to the Policy, the processing of the Claim and possibly other aspects of this case that Plaintiffs themselves do not have. As the policyholders, claimants and the putatively injured parties, however, Plaintiffs must know something about the origins, processing and payment of their claim—like the nature of the losses suffered, the amount of coverage sought, the amount of coverage provided, the timing of any payments and the reasons (if any) provided for withholding payments—that bears on the plausibility assessment required under Rule 12(b)(6). For whatever reason, no such facts are furnished in the Complaint and the Court therefore finds that Plaintiffs have failed to state a claim for breach of the implied covenant of good faith and fair dealing as to either of the Defendants.

**2.     Alter Ego Doctrine**

The Complaint acknowledges that LMIC is not a party to the insurance contract in question but alleges that LMIC is liable for bad faith breach as General's alter ego. Doc. No. 1 ¶¶

13-16; see also, Doc. No. 11, Part I. In moving to dismiss, Defendants argue that Plaintiffs cannot allege facts showing that LMIC is General's alter ego because General is adequately capitalized and engaged in a distinct line of business. Doc. No. 8, Part IV. B. Plaintiffs set forth additional facts relating to the alter ego issue in their opposition and argue that the Court should adopt a broad view of the alter ego doctrine in line with *MGA Entertainment v. Hartford Ins. Group*, 2012 WL 12894053 (C.D. Cal. 2012). No. 10, Part I.

**a.  Legal Standard**

"The alter ego doctrine prevents individuals or [] corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." Sonoro Diamond Corp. v. Sup. Ct., 83 Cal.App.4th 523, 538 (2000); see also, Gerritsen v. Warner Bros. Entm't Inc., 116 F.Supp. 3d 1104, 1135–36 (C.D. Cal. 2015).

"Two elements must be present in order to find that one corporation is the alter ego of another." Calvert v. Huckins, 875 F.Supp. 674, 678 (E.D. Cal. 1995); see also, Monaco v. Liberty Life Assur. Co., 2007 WL 420139, *5 (N.D. Cal. Feb. 6, 2007). "First, the parent must control 'the subsidiary to such a degree as to render the latter the mere instrumentality of the former.' " Calvert, 875 F.Supp. at 674 (quoting Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc., 116 Cal.App.3d 111, 119 (1981)). "Second, because piercing the corporate veil is a remedy founded on principles of equity, there must be enough evidence to support a finding that failure to look past the corporate entity would " 'sanction a fraud or promote injustice.' " Id. (quoting Marr v. Postal Union Life Ins. Co., 40 Cal.App.2d 673, 681 (1940) and Las Palmas Associates v. Las Palmas Center Associates, 235 Cal.App.3d 1220, 1249 (1991)).

"Underlying both of these factors is a general presumption in favor of respecting the corporate entity." Calvert, 875 F. Supp. at 678. "Disregarding the corporate entity is recognized as an extreme remedy" and "[c]ourts will pierce the corporate veil only in exceptional circumstances." Id. (quoting National Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc., 785 F.Supp. 1186, 1192 (W.D.Pa.1992)) (internal quotation marks omitted). "Simply availing oneself of the protections provided by corporate charters is not misconduct sufficient to justify a court in finding a corporation to be an alter ego." Tatung Co., Ltd. v. Shu Tze Hsu, 217 F.Supp.3d 1138,

7

1176 (C.D. Cal. 2016) (citation omitted).

"Whether to pierce the corporate veil [on an alter ego theory] is a factual inquiry that should be done on a case-by-case basis," Calvert, 875 F. Supp. at 678 (citing Keffer v. H.K. Porter Co., Inc., 872 F.2d 60, 65 (4th Cir.1989)) and "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim." Gerritsen, 116 F.Supp.3d at 1140-41; Monaco, 2007 WL 420139 at *5. "[A] plaintiff must allege specific facts supporting both of the necessary elements." Id. at 1136 (citations omitted).

**b.    Discussion**

The Court will address each prong of the alter ego analysis—the "unity of interest" prong and the "inequitable result" prong—in light of the foregoing case law.

*i.    "Unity of Interest" Prong*

With respect to the "unity of interest" prong, the Complaint alleges that General, which is sometimes referred to as a "SAFECO Company," "is a New Hampshire corporation licensed to conduct business in the State of California" and that LMIC "is a Massachusetts corporation licensed by the California Department of Insurance." Doc. No. 1 ¶¶ 2-3. Plaintiffs also allege that General is the insurer that issued the Policy, id. ¶ 7, but that "LMIC employees, supervisors, and managers were solely responsible for accepting, investigating and adjusting Plaintiffs' [] claim for benefits under the Policy" and that, in doing so, LMIC personnel "routinely represented that they were 'Safeco,' 'General' or 'Liberty Mutual.' " Id. ¶ 10. Similarly, the Complaint alleges that "[p]olicies underwritten by General are marketed and advertised as sold by Liberty Mutual, not the true insuring entity, General," and that "[t]he Policy sold to Plaintiffs misleadingly represents that the insurer is a non-existent entity called 'Safeco, a Liberty Mutual Company.' " Id. ¶ 13-15. Finally, the Complaint states that "LMIC has admitted and the federal courts have concluded that [an insurance] carrier has a unity of interest with its subsidiaries." Id. ¶ 16.

The factual allegations in the Complaint are plainly insufficient to satisfying the "unity of interest" prong of the alter ego analysis. The Complaint shows that General and LMIC are distinct entities in complementary lines of business, see Doc. No. 1 ¶ 22.l. (referring to General as an "insurer"); ¶ 13 (stating that LMIC "provides claims investigation and adjusting services" to

1  General); ¶ 22.k.-l. (same), with no allegations at all regarding the organizational relationship
2  between General and LMIC aside from a few oblique paragraphs that could be read to imply that
3  General is an LMIC subsidiary of some sort. See, e.g., id. ¶¶ 16, 18, 20. The Court, therefore,
4  cannot infer from facts alleged in the Complaint that General is a "mere instrumentality" of
5  LMIC—or even that General is under LMIC's control. See Calvert, 875 F.Supp. at 674.

6  Similarly, the Court sees no merit in Plaintiffs' contention that "LMIC has admitted and
7  the federal courts have concluded that [an insurance] carrier has a unity of interest with its
8  subsidiaries." Doc. No. 1 ¶ 16. General was not involved in the case on which that contention is
9  based (*Tam Vu v. Liberty Mut. Ins. Co.*, No. 18-CV-03594-SI (N.D. Cal. 2018)); the court's
10 analysis in *Vu* was limited to the second ("inequitable result") prong of the alter ego analysis; and
11 LMIC's only concession in *Vu*, after multiple rounds of pleading, was that the third amended
12 complaint "allege[d] facts that, when assumed to be true …, [we]re sufficient to satisfy the unity
13 of interest element at the pleading stage." *Vu* is thus irrelevant to determining whether Plaintiffs
14 have adequately pled "unity of interest" between General and LMIC here. See Calvert, 875
15 F.Supp. at 678; see also Tomaselli v. Transamerica Ins. Co., 25 Cal.App.4th 1269, 1285 n.13
16 (1994) ("The factors which may show the 'unity of interest' issue vary according to each case and
17 are fact specific." (citation omitted)).

18 In addition to the allegations in the Complaint, Plaintiffs make several factual assertions in
19 the opposition (based on documents for which Plaintiffs seek judicial notice) that could be
20 relevant to determining whether there is a "unity of interest" between General and LMIC,
21 including, for example, assertions that: General, has no employees;  LMIC owns all of General's
22 stock; General and LMIC share officers and directors; General and LMIC file joint tax returns;
23 and General and LMIC are party to investment, reinsurance and risk pooling arrangements which
24 serve to merge their income and liabilities. Doc. No. 10 at 10:15-11:15.

25 Defendants' motion to dismiss, however, goes merely to the sufficiency of Plaintiffs'
26 pleading and the Court sees no cause or justification for allowing Plaintiffs to amend the
27 Complaint through the opposition or for converting the instant motion to dismiss to a motion for
28 summary judgment. See J.K. By & Through R.K. v. Dillenberg, 836 F.Supp. 694, 700 (D. Ariz.

1993) ("The purpose of the motion to dismiss is to test the formal sufficiency of the pleadings that constitute the claim. [citation] It is not 'a procedure for resolving a contest about the facts or the merits of the case.' " (quoting 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990))). The Court, therefore, declines to consider the facts asserted for the first time in the opposition, see Lorbeer Enterprises, LP v. Liberty Mut. Ins. Co., 2019 WL 4284514, *2 (C.D. Cal. May 9, 2019) (rejecting alter ego arguments based on facts not alleged in the operative pleading), and finds that Plaintiffs have failed to allege facts showing a "unity of interest" between General and LMIC as required under the first prong of the alter ego analysis.[3]

### ii. "Inequitable Result" Prong

As to the "inequitable result" prong of the alter ego analysis, Plaintiffs allege in a section of the Complaint entitled "Inequitable Result if the Alter Ego Doctrine Is Not Applied" that the adjusters who handled their claim "informed Plaintiffs and/or their agent in both written and oral communications that they represented Liberty Mutual Insurance Company or Safeco, a Liberty Mutual Company"; "never told Plaintiffs or their agent that they worked for or represented General"; and that LMIC failed to "guide and train its employees" properly. Doc. No. 1 ¶ 22. Plaintiffs further allege that LMIC "exercised complete control over the investigation and adjusting of Plaintiffs' Claim" and engaged "in a widespread scheme to both deny and underpay fire loss claims" that included hiding coverage, misrepresenting coverage, failing to investigate claims adequately, applying policy provisions improperly, denying claims without justification and forcing insureds to file lawsuits to recover policy benefits. Id. Finally, Plaintiffs allege that "LMIC employees and supervisors involved in the investigation of Plaintiffs' Claim reside outside California" and that "General has a small fraction of the assets of LMIC." Id.

Plaintiffs argue, in essence, that an inequitable result would occur if LMIC were not treated as General's alter ego for purposes of liability on Plaintiffs' bad faith claim because excluding

---

[3] Plaintiff filed a request for judicial notice asking the Court to take notice of various financial statements and government records. Doc. No. 8-1. Defendants, similarly, filed a request for judicial notice asking the Court to take notice of two financial statements and a reply memorandum from *Vu. v. Liberty Insurance Company et al.,* Case No. 3:18-cv-03594-SI (N.D. Cal. 2018). As reflected in this Order, the Court did not have cause to rely on any of these records in deciding the motions at bar and both requests are therefore DENIED as moot.

10

1  LMIC from the case would make discovery narrower and more cumbersome and potentially
2  reduce the size of a punitive damages award. Doc. No. 11, Part I.B. Further, Plaintiffs contend that
3  federal courts have already "held that [] an inequitable result will obtain if LMIC is not treated as a
4  single entity with its subsidiary companies" and argue that this Court should follow the holding in
5  *MGA Entertainment* that an inequitable result occurs where the party subject to bad faith liability
6  is not the party who did the acts giving rise to such liability. Id. at 20:23-24.

7  Defendants, for their part, dispute Plaintiffs' assertion that federal courts have already
8  "held that [] an inequitable result will obtain if LMIC is not treated as a single entity with its
9  subsidiary companies" and argue that the view of the "inequitable result" prong set forth in *MGA*
10 *Entertainment* is "contrary to long-standing authority" showing that "California appellate courts
11 routinely find no inequitable result where … the facts demonstrate the subsidiary has sufficient
12 assets to satisfy any judgment against it." Doc. No. 11 at 13:3-18. Further, they argue that
13 Plaintiffs fail to allege that General lacks sufficient assets to pay whatever compensatory and
14 constitutionally permissible punitive damages might be awarded in this case. Doc. No. 11, Part
15 III.A. Finally, they contend that difficulty in prosecuting an action "is not an inequitable result"
16 for purposes of the second prong of the alter ego analysis and that, in any event, the Federal Rules
17 of Civil Procedure allow Plaintiffs to secure the discovery required to prosecute this case properly
18 even if LMIC is not named as a defendant. Id., Part III.C.

19 The Court agrees with Defendants that Plaintiffs' assertion that federal courts have already
20 found that LMIC must be treated as a single entity "with its subsidiary companies" carries no
21 weight. As noted above, General was not involved in the case on which that proposition is based,
22 and the law plainly requires a case-by-case application of the alter ego doctrine based on facts
23 specific to the entities involved. Gerritsen, 116 F. Supp. 3d at 1136. Further, it is not even clear in
24 this case that Plaintiffs have adequately alleged that General is an LMIC subsidiary.

25 The Court similarly agrees with Defendants that the reasoning in *MGA Entertainment* is
26 unpersuasive and inapplicable here. The application of the alter ego doctrine in *MGA*
27 *Entertainment*—where the court found that the "injustice" of holding an insurer "solely liable" for
28 the unauthorized denial of claims by agents employed by an affiliated entity satisfies the

11

1  "inequitable result" test—is predicated on protecting the defendant insurer from putative injustice.
2  See MGA Entm't, Inc., 2012 WL 12894053 at *15. It is well-settled, however, that it is injustice
3  to the plaintiff—not injustice to a corporate defendant—that justifies application of the alter ego
4  doctrine. See Gerritsen, 116 F.Supp.3d at 1135–36 ("The alter ego doctrine arises when a plaintiff
5  comes into court claiming that an opposing party is using the corporate form unjustly and in
6  derogation of the plaintiff's interests."); see also, Wady v. Provident Life & Accident Ins. Co. of
7  Am., 216 F.Supp.2d 1060, 1070 (C.D. Cal. 2002) ("A court will pierce the corporate veil only
8  where failure to do so 'would be to defeat the rights and equities of third persons.' " (quoting
9  Kohn v. Kohn, 95 Cal.App.2d 708, 720 (1950)); Tomaselli, 25 Cal.App.4th at 1285 ("Alter ego is
10 a limited doctrine, invoked only where recognition of the corporate form would work an injustice
11 to a third person." (citing 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, §§ 12–23,
12 pp. 524–537)). Indeed, the alter ego doctrine is, at bottom, about stripping defendants of
13 protections they otherwise enjoy by virtue of their corporate form. See Sonoro Diamond Corp., 83
14 Cal.App.4th at 538. Moreover, in contrast to *MGA Entertainment*, there is no allegation here that
15 LMIC acted "without authorization" from General in processing the Claim. Indeed, the Complaint
16 expressly alleges that General was in on LMIC's "scheme to deny and underpay fire loss claims."
17 Doc. No. 1 ¶ 22.t. Invoking the alter ego doctrine to protect General from injustice makes no sense
18 as a matter of law or fact (as alleged in the Complaint), and the Court therefore declines to extend
19 *MGA Entertainment* to this case.

20      Finally, the Court agrees with Defendants that Plaintiffs have failed to show that they
21 would suffer injustice in connection with either discovery or punitive damages if LMIC is not
22 included as a defendant on Plaintiffs' bad faith claim. As Defendants point out, the Federal Rules
23 of Civil Procedure allow for robust discovery from non-parties, see Tam Vu v. Liberty Mut. Ins.
24 Co., 2018 WL 5982867, *3 (N.D. Cal. Nov. 14, 2018), and while Plaintiffs speculate that treating
25 General and LMIC as a single entity could increase the size of a punitive damages award, the
26 Court sees nothing supporting an inference that General alone would be unable to pay whatever
27 compensatory or punitive damages might properly be awarded in this case. Nor does the Court see
28 how piercing the corporate veil and joining LMIC as a defendant for the purpose of increasing a

1  prospective punitive damages award would be proper when LMIC is not otherwise liable on
2  Plaintiffs' claim. See Tomaselli, 25 Cal.App.4th at 1285-1286 (finding there was "nothing to
3  suggest how an 'injustice' would befall the [plaintiffs] if the punitive damage award were limited
4  to a percentage of appellant's value rather than that of the parent company").
   
   Since the Complaint fails to allege facts showing that Plaintiffs would be prejudiced if
   General and LMIC are allowed to maintain separate corporate identities for purposes of this
   litigation, the Court finds that Plaintiffs have failed to satisfy the "inequitable result" prong of the
   alter ego doctrine.

### 3. Conclusion Regarding Motion to Dismiss

For the foregoing reasons, the Court will grant Defendants' motion to dismiss in its entirety. Plaintiffs have not yet amended the Complaint and it is possible that the pleading defects identified above could be remedied. The Court will therefore grant Plaintiffs leave to amend the Complaint consistent with the analysis in this Order. Plaintiffs will be required to file their First Amended Complaint, if at all, within 21 days of electronic service of this Order.

### DEFENDANTS' MOTION TO STRIKE

Defendants move the Court "to strike all of Plaintiffs' alter-ego and single enterprise claims and allegations on the basis that they fail to support any claim upon which relief can be granted, and thus, are immaterial and/or impertinent." Doc. No. 8 at 2:19-22; see Fed.R.Civ.P. 12(f). In light of the fact that the Court has granted Plaintiffs leave to amend the Complaint with respect to alter ego allegations as well as the bad faith claim, the Court will deny Defendants' motion to strike as moot, without prejudice to bringing a motion to strike in connection with the First Amended Complaint.

### ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 8) is GRANTED in its entirety;

2. Defendants' motion to strike is DENIED (Doc. No. 8) as moot;

3. Plaintiffs are granted LEAVE TO AMEND the Complaint consistent with the analysis

set forth in this Order and may file a First Amended Complaint no later than 21 days from the date of electronic service of this Order; and

5. If Plaintiffs fail to file a First Amended Complaint within 21 days of electronic service of this Order, leave to amend shall automatically be withdrawn and this case will be closed without further notice to the parties.

IT IS SO ORDERED.

Dated:  July 15, 2020

SENIOR DISTRICT JUDGE